UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BANKS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PAM AHLIN, Director of California Department of State Hospitals,<br><br>　　　　Defendant. | CASE NO. 1:15-cv-00605-AWI-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF NO. 1)**<br><br>**AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |

　　Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is before the Court for screening.

**I.　SCREENING REQUIREMENT**

　　The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.　PLEADING STANDARD**

　　Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.  PLAINTIFF'S ALLEGATIONS

Plaintiff is detained at Coalinga State Hospital ("CSH"). He names as Defendant Pam Ahlin, Director of California Department of State Hospitals ("DSH").

Plaintiff's allegations may be summarized essentially as follows.

Plaintiff submits a form complaint in which the only fact specific to him is that he entered the custody of DSH on May 22, 2013, pursuant to California's Sexually Violent Predator Act ("SVPA").[1] See Compl. ¶ 11.

---

[1] This same complaint has been submitted in practically identical form in multiple cases in this District on or around March 5, 2015. See, e.g., Carter v. Ahlin, 1:15-cv-0483-MJS, ECF No. 1; Cassells v. Ahlin, 2:15-cv-0495-MCE-KJN, ECF No. 1; Acosta v. Ahlin, 2:15-cv-0497-WBS-DAD, ECF No. 1; Guzman v. Ahlin, 1:15-cv-0786-BAM, ECF No. 1.

In the remainder of the pleading, Plaintiff alleges that Defendant is aware his confinement is excessively restrictive in relation to the purposes of the SVPA and that he has been irrationally denied the benefits of outpatient treatment. Plaintiff contends that Defendant's assessment of whether Plaintiff was likely to commit sexually violent predatory offenses if released into the community was based on an irrational and fraudulent assessment scheme. He points to various research studies and other articles purporting to demonstrate that recidivism rates for sexually violent predators are lower than perceived, that the assessment tools used by the State of California are unreliable, and that supervised release and outpatient treatment of sex offenders are as effective as, if not more effective than, civil detention in ensuring such offenders do not recidivate.

Plaintiff alleges that the assessment scheme and denial of outpatient treatment violate his Fourteenth Amendment rights to procedural and substantive due process, adequate treatment, equal protection, and to be free from conditions that are excessively restrictive in relation to their purported purposes.

Plaintiff also challenges various conditions of his confinement, including limitations on what he may possess, what privileges he may have, and what he may wear.

Plaintiff seeks injunctive relief from the prospect of being subjected to future (1) assessments of his alleged current mental condition and current volitional control, (2) deprivations of his Fourteenth Amendment right to not be subjected to conditions that are excessively restrictive in relation to legitimate governmental interests, (3) violations of his Fourth Amendment right to be free from unreasonable searches and seizures, and (4) violations of his First Amendment right to free speech and not have his ability to send, store and receive information be unreasonably interfered with.

IV. **ANALYSIS**

    A. **Overview of Sexually Violent Predator Act**

The SVPA, Cal. Welf. & Inst. Code §§ 6600 et seq., provides for the civil commitment of "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). The SVPA codifies a process involving several administrative and judicial stages to determine whether an individual meets the requirements for civil commitment.

First, the California Department of Corrections and Rehabilitation (CDCR) and Board of Parole Hearings (BPH) screens inmates who may be sexually violent predators at least six months prior to their scheduled release dates. Cal. Welf. & Inst. Code § 6601(a)(1), (b). The screening is conducted in accordance with a structured screening instrument developed by the State Department of State Hospitals ("SDSH"). Cal. Welf. & Inst. Code § 6601(b). If CDCR and BPH determine that an individual "is likely to be a sexually violent predator," CDCR refers the individual to the SDSH for a full evaluation. Id.

The SDSH employs a standardized assessment protocol to determine whether a person is a sexually violent predator under Cal. Welf. & Inst. Code § 6601(c). If two SDSH evaluators, or in some circumstances, two independent evaluators, determine that the person has "a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Director of SDSH forwards a request for a petition for commitment to the applicable county. Cal. Welf. & Inst. Code § 6601(d)-(h).

If the county's designated counsel agrees with the request, a petition for commitment is filed in Superior Court. Cal. Welf. & Inst. Code § 6601(i). "The filing of the petition triggers a new round of proceedings" under the SVPA. People v. Superior Court

(*Ghilotti*), 27 Cal. 4th 888, 904 (Cal. 2002). The petition is reviewed by a superior court judge to determine whether the petition "states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." Cal. Welf. & Inst. Code § 6601.5. If so found, a probable cause hearing is conducted, at which the alleged predator is entitled to the assistance of counsel. Cal. Welf. & Inst. Code §§ 6601.5, 6602(a). If, at the hearing, no probable cause is found, the petition is dismissed. Id. However, if probable cause is found, a trial is conducted. Id.

At trial, the individual is entitled to the assistance of counsel, to retain experts or other professionals to perform an examination on his or her behalf, and to access all relevant medical and psychological records and reports. Cal. Welf. & Inst. Code § 6603(a). Either party may demand a jury trial. Cal. Welf. & Inst. Code § 6603(a)-(b). The trier of fact must determine whether the person is a sexually violent predator beyond a reasonable doubt. Cal. Welf. & Inst. Code § 6604. "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of [SDSH] for appropriate treatment and confinement in a secure facility designated by the Director of State Hospitals." Id.

Once committed, sexually violent predators must be reevaluated at least annually. Cal. Welf. & Inst. Code § 6604.9(a). The annual report must include consideration of whether the person "currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative, pursuant to Section 6608, or an unconditional discharge, pursuant to 6605, is in the best interest of the person and conditions can be imposed that would adequately protect the community." Cal. Welf. & Inst. Code § 6604.9(b). If SDSH has reason to believe the person is no longer a sexually violent predator, it shall seek judicial review of the commitment. Cal. Welf. & Inst. Code § 6605(c). If SDSH determines that conditional release or unconditional discharge is appropriate, it shall authorize the committed person to petition the court for conditional

release or unconditional discharge. Cal. Welf. & Inst. Code § 6604.9(d). The committed person also may petition the court for conditional release without the recommendation or concurrence of SDSH. Cal. Welf. & Inst. Code § 6608(a).

The court may deny a petition for conditional release without a hearing if it is based on frivolous grounds. Cal. Welf. & Inst. Code § 6608(a). If the petition is not based on frivolous grounds, the court shall hold a hearing to determine "whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." Cal. Welf. & Inst. Code § 6608(g). The committed person has the right to counsel and the appointment of experts for the hearing. Cal. Welf. & Inst. Code § 6608(a), (g). The committed person bears the burden of proof by a preponderance of the evidence, unless the SDSH's annual reevaluation determines that conditional release is appropriate, in which case the State bears the burden of proof. Cal. Welf. & Inst. Code § 6608(k). If the court determines that the committed person would not be a danger while under supervision and treatment, the person shall be placed in a conditional release program for one year. Cal. Welf. & Inst. Code § 6608(g). Thereafter, the committed person may petition the court for unconditional discharge. Cal. Welf. & Inst. Code § 6608(m).

If, upon receiving a petition for unconditional discharge, the court finds probable cause to believe that the committed person is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged, a hearing is conducted. Cal. Welf. & Inst. Code § 6605(a)(2). At the hearing, the committed person is entitled to the same constitutional protections afforded at the initial trial. Cal. Welf. & Inst. Code § 6605(a)(3). Either party may demand a jury trial. Id. The state bears the burden of proving, beyond a reasonable doubt, that the committed person remains a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged. Id. If the petition is resolved in the committed person's

favor, he is unconditionally released and unconditionally discharged. Cal. Welf. & Inst. Code § 6605(b).

### B.  The SVPA Mental Health Assessments

#### 1.  Claims Must be Brought in Habeas Action

Insofar as Plaintiff is challenging the validity of his continued detention, the exclusive method for asserting that challenge is by filing a petition for a writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). See 28 U.S.C. § 2254(a). Such claims may not be brought in a section 1983 action. Nor may Plaintiff seek to invalidate the fact or duration of his confinement indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. Wilkinson, 544 U.S. at 81. A section 1983 action is barred, no matter the relief sought, if success in that action would necessarily demonstrate the invalidity of confinement or its duration. Id. at 81-82; Heck v. Humphrey, 512 U.S. 477, 489 (1994) (unless and until favorable termination of the conviction or sentence, no cause of action under section 1983 exists); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1140 (9th Cir. 2005) (applying Heck to SVPA detainees with access to habeas relief).

While a claim for prospective relief often does not call into question the validity of a plaintiff's confinement, see Edwards v. Balisok, 520 U.S. 641, 648 (1997), Plaintiff's complaint can reasonably be construed as a direct challenge to his custody, which he may not bring in a section 1983 action. Wilkinson, 544 U.S. at 78. Plaintiff's allegation that he was denied outpatient treatment in violation of the Due Process and Equal Protection clauses clearly implicates the validity of his confinement. He does not seek outpatient treatment as a stand-alone mental health care claim; rather, he seeks outpatient treatment in lieu of civil detention.[2] Again, success on this claim would

---

[2] Plaintiff contends that his Equal Protection rights are being violated because his current mental status is not being considered while civilly committed compared to those similarly situated. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250

invalidate Plaintiff's confinement, and the claim therefore may not be brought in a section 1983 action. Id. Moreover, Plaintiff's claim that the assessment methodology violated his Due Process rights is barred on the same ground. See Huftile, 410 F.3d at 1141 (concluding that challenge to SVPA assessments would imply invalidity of civil commitment and therefore could only be brought in habeas corpus). Insofar as his claims are based on the use of the assessments in his civil commitment proceedings, they present a direct challenge to the validity of his confinement, and may not be brought in this action. Wilkinson, 544 U.S. at 81. And finally, to the extent he attempts to assert due process rights in this assessment process itself, any claim as to the propriety of the assessments is so related to the civil commitment proceeding that success thereon would imply the invalidity of Plaintiff's confinement: absent the allegedly deficient assessments, no petition for commitment would have been filed, and there would have been no basis for the Superior Court to proceed on the petition to civilly commit Plaintiff under the SVPA. Huftile, 410 F.3d at 1141.

In sum, until Plaintiff's civil detention has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," Plaintiff is barred from bringing his claims under section 1983.[3] Heck, 512 U.S. at 487.

---

F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). Plaintiff has not alleged that he is a member of a protected class or that Defendant intentionally treated Plaintiff differently than others similarly situated. Accordingly, he fails to state an Equal Protection claim. Plaintiff's allegations regarding the treatment of other sexually violent predators in other states do not reflect intentional disparate treatment on the part of Defendant.

[3] The Court notes that the California Supreme Court has upheld the SVPA against due process, equal protection, and ex post facto challenges. See Hubbart v. Superior Court, 19 Cal.4th 1138 (1999), cited by People v. Mckee, 223 P.3d 566 (2010).

## 2. Prospective Relief Related to Future Assessments

As noted, Edwards leaves open the possibility for Plaintiff to seek prospective relief in a section 1983 action to prevent future injury caused by future assessments. 520 U.S. at 648. However, given its lack of clarity about his current commitment status and the question of whether he is subject to future assessments, Plaintiff's complaint does not specifically articulate such a claim and its present allegations do not state a cognizable claim.

Plaintiff alleges the assessments violated his procedural and substantive Due Process rights, but he does not identify any process due to him, under the SVPA or otherwise, that was denied in past assessments and that may be denied in future assessments. Significantly, the assessments are not determinative of whether Plaintiff's detention should continue. Rather, Plaintiff may petition the court for conditional release without the recommendation or concurrence of SDSH. Cal. Welf. & Inst. Code § 6608(a). Plaintiff's continued detention is determined by a judge at a hearing in which Plaintiff has the right to counsel and to retain experts to rebut the State's assessments. Cal. Welf. & Inst. Code § 6608. His ultimate release from commitment is determined by a judge or jury in a proceeding in which Plaintiff maintains the right to counsel and to retain experts, and the State bears the burden of proof beyond a reasonable doubt. Cal. Welf. & Inst. Code § 6605. The SVPA provides sufficient procedural mechanisms for Plaintiff to challenge the assessments, and to demonstrate that he no longer qualifies for civil detention. These protections are such that any flaws in the assessment process do not rise to a due process violation.

### C. Defendant Ahlin

#### 1. Supervisory Liability and Linkage

The Court turns next to the allegations directed against the sole Defendant, Pam Ahlin, who is named in both her individual and official capacities. Under Section 1983, Plaintiff bringing an individual capacity claim must demonstrate that each Defendant

personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Monell, 436 U.S. at 691. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Iqbal, 556 U.S. at 676.

Liability may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants cannot be held liable for being generally deficient in their supervisory duties.

Plaintiff alleges that Defendant Ahlin knew that none of the restrictive conditions that he lists in the complaint would exist if civil detainees like Plaintiff were confined in non-penal residences. Plaintiff also alleges that Defendant Ahlin was aware that each of the restrictions listed violated Plaintiff's First Amendment and Fourth Amendment rights. However, Plaintiff does not tie the litany of allegedly unconstitutional restrictions to any particular facts. There are no facts that Defendant Ahlin knew of each of the alleged violations, what specific document, claim, or suit gave her notification, and how she failed to act to prevent the violations from continuing to occur. The complaint also fails to provide any allegations that this Defendant knew of the conditions to which the plaintiff in particular was subjected at CSH, let alone tending to show that some specific action or

10

omission by her caused him to be thus subjected. Stated simply, Plaintiff's conclusory assertion that Defendant Ahlin should have known about the conditions under which he is housed is insufficient to state a claim against her

### 2. Official Capacity

Under Section 1983, plaintiff may also seek prospective injunctive relief against defendant in her official capacity. See Thornton v. Brown, 757 F.3d 834, 839 (9th Cir. 2013) (citing cases). "Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing, inter alia, Monell v. Dept. of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n.55 (1978)).

In an official-capacity action, a governmental entity may be liable under Section 1983 if it was the "moving force" behind the alleged violation of constitutional rights, based on the entity's "policy or custom." Graham, 473 U.S. at 166-67 (citations and internal quotation marks omitted). As the Ninth Circuit Court of Appeals explained in Hartmann v. CDCR, 707 F.3d 1114, 1127 (9th Cir. 2013):

> A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. See id.; Graham, 473 U.S. at 166. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief. See L.A. Cnty. v. Humphries, 562 U.S. 29 (2010); Hafer [v. Melo], 502 U.S. [21] at 25 [1991].

Plaintiff here has failed to allege facts demonstrating that Defendant Ahlin helped promulgate or ratified any policy or practice that allegedly violated Plaintiff's rights. If Plaintiff chooses to amend, he must specifically identify the policy or custom and its contents, and to the best of his ability state when it was adopted, by whom, and how it led to the violation of his constitutional rights. Additionally, a defendant in a suit to enjoin

an allegedly unconstitutional policy or practice must be able to appropriately respond to court-ordered injunctive relief if the plaintiff prevails. Ex Parte Young, 209 U.S. 123, 157-61 (1908). Plaintiff's complaint fails to assert that Defendant Ahlin has the ability to appropriately respond to court-ordered injunctive relief.

### D.  Fourteenth Amendment Conditions of Confinement Claim

The complaint's final few pages challenge the conditions of Plaintiff's confinement by identifying numerous restrictions on the personal property that he may possess, what privileges he may have, and what he may wear.

Plaintiff, a civil detainee, is not a prisoner within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000). He retains greater liberty protections than individuals detained under criminal process and is "'entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004) (quoting Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). Plaintiff's right to constitutionally adequate conditions of confinement is protected by the substantive component of the Fourteenth Amendment's Due Process Clause.[4] Youngberg, 457 U.S. at 315.

Treatment is presumptively punitive when a civil "detainee is confined in conditions identical to, similar to, or more restrictive" than his criminal counterparts. Jones, 393 F.3d at 933. To elaborate, a restriction on a civil detainee is punitive, for this

---

[4] Nonetheless, in analyzing a civil detainee's substantive due process claim, the Court may look to cases analyzing criminal convicts' Eighth Amendment conditions-of-confinement claims where appropriate. That is, where a court has awarded relief on a convicted inmate's conditions claim under the Eighth Amendment, *a fortiori* that court would have awarded relief to a civil detainee under the more protective Fourteenth Amendment. As our Circuit has held,

> Although civil detainees must be afforded more considerate treatment under the 14th Amendment than criminal convicts are afforded, the contours of the Eighth Amendment are better defined and can provide a useful barometer for measuring unconstitutional conduct.

Smith v. Solano Cty., 2013 WL 3930730, *4 (E.D. Cal. July 29, 2013) (citing Hydrick v. Hunter, 466 F.3d 676, 699 (9th Cir. 2006)). "For example, conduct that would violate the Eighth Amendment rights of a criminal convict by definition [*a fortiori*] also violates the Fourteenth Amendment rights of a civil detainee." Id.

12

purpose, if it is expressly intended to punish, or if it is excessive in relation to a non-punitive purpose, or if it is imposed to achieve an objective which could be accomplished through "many" less harsh alternative methods. Id. at 933-34; see also Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004). For this purpose, non-punitive governmental interests include ensuring the detainee's presence at trial, maintaining jail security, and effectively managing a detention facility. Jones, 393 F.3d at 931; see also Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) (quoting Bell v. Wolfish, 441 U.S. 520, 539 (1979)); Hallstrom v. Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993). Moreover, the civil detainee cannot state a substantive due process claim arising out of his conditions of confinement merely by alleging that the restrictive measures used were less desireable or less prudent than less restrictive alternatives that were available. Cf. Reno v. Flores, 507 U.S. 292, 303-04 (1993).

A determination whether Plaintiff's rights were violated requires "balancing his liberty interests against the relevant state interests"; the Constitution, however, is not concerned with de minimis restrictions on a patient's liberties. Youngberg, 457 U.S. at 320. Additionally, there must be a reasonable relationship between "the conditions and duration of confinement" and the purpose for which the civilly confined person is committed. Seling v. Young, 531 U.S. 250, 265 (2001).

### 1. Personal Property

Plaintiff's complaint lists over 60 restrictions to which he is presumptively subjected. Many of these restrictions concern personal property that he is prohibited from possessing, others concern his privacy interest, and still others concern limitations on his activities. The Court declines to consider the constitutionality of each of these restrictions in a vacuum.

Nonetheless, the Court will address some points in order to provide Plaintiff with guidance should he decide to file an amended complaint. It is beyond dispute that civil detainees have a protected interest in personal property. Hansen v. May, 502 F.2d 728,

730 (9th Cir.1974). In this context, the Due Process Clause protects prisoners from being deprived of their property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither negligent or "unauthorized intentional deprivations of property gives rise to a violation of the Due Process Clause if the state provides an adequate post-deprivation remedy." Hudson v. Palmer, 468 U.S. 517, 533 n. 14 (1983). In other words, only an authorized intentional deprivation of property is actionable under the Due Process Clause. Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

Legitimate, non-punitive governmental objectives include maintaining security, ensuring a detainee's presence at trial, and managing the detention facility effectively. Jones, 393 F.3d at 932 (citing Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993)). Moreover, there is no outright prohibition on housing SVPs in jails or prisons, Jones, 393 F.3d at 932, and "the actual treatment a prisoner [or detainee] experiences will depend upon predictions about him based upon his known history and the correctional officer's experience with him in the institutional setting." Cerniglia v. Cty. of Sacramento, 566 F. Supp. 2d 1034, 1043-44 (E.D. Cal. 2008). Detainees "whose history suggests a risk of escape or the likelihood of violence within the institution will be subjected to closer security than those whose history is free of violence and whose institutional history has been free of problems." Id. Plaintiff identifies a lengthy list of items that civil detainees may not possess. While this list is long, there are no allegations that he possessed personal property that was confiscated and that the confiscation was an authorized deprivation.

For any unauthorized confiscations, California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 810-895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California's Tort Claims Act

14

requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2 (West 2014). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal. 4th 1234, 1245 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal. 4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

### 2. Clothing

Next, Plaintiff complains of having to wear prison style uniforms that have been worn by others and not being able to possess more than a week's worth of clothing. While "[t]he denial of adequate clothing can inflict pain under the Eighth Amendment," Plaintiff fails to allege how he has been harmed by this restriction or how the restriction is meant to punish. Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

### 3. Privacy

Though the Court addresses this issue further in the context of Plaintiff's Fourth Amendment claim (see infra), Plaintiff also complains of having to share a room with others, being subjected to emergency drills that disturb him in his room, and a lack of privacy in using the toilets and showers. Plaintiff fails to allege that he has a reasonable expectation of privacy in his room or the shower area. He also fails to allege how he is harmed by his conditions or how they have caused him "to endure genuine privation and hardship over an extended period of time." Bell v. Wolfish, 441 U.S. 520, 542 (1979).

Plaintiff should note that mere double-bunking of residents at a treatment facility is not a per se violation of due process. Bell, 441 U.S. at 542 (citing Cote v. Maloney, 152 Fed. Appx. 6, 7 (1st Cir. 2005)). Some crowding and loss of freedom of movement is one of the inherent discomforts of confinement. Id.; See also Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004) (noting that Bell determined that "the additional discomfort of having to share the already close corners with another detainee was not sufficiently great to constitute punishment."). Even if sharing his room with another individual were to constitute more than de minimis harm, Plaintiff fails to allege that the condition was intended to punish or was excessive in relation to a non-punitive purpose. Jones v. Blanas, 393 F.3d 918, 934 (9th Cir. 2004).

### E. First Amendment Claim

Relatedly, Plaintiff contends that his First Amendment right "to send and receive information" is being violated because he is unable to possess, inter alia, computers, printers, scanners, and cell phones. Generally, the right to free speech includes "the right to utter or to print, ... the right to distribute, the right to receive, the right to read," and the freedom of inquiry and thought. Griswold v. Connecticut, 381 U.S. 479, 482 (1965). Although detainees retain their right to freedom of speech under the First Amendment, the right may be restricted. Bell v. Wolfish, 441 U.S. 520, 545-46 (1979). Restrictions on prisoners' First Amendment rights are analyzed under the reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). "Interference is valid if it is reasonably related to legitimate penological interests." Safley, 482 U.S. at 89. Again, the Court is unable to evaluate Plaintiff's claim because the form complaint is devoid of any facts. Plaintiff does not assert, for example, that he possessed any of these items and that they were confiscated, or that he asked to possess these items and his requests were unreasonably denied, and that he suffered injury as a result. Absent any allegations, the Court cannot say whether Plaintiff states a claim.

### F. **Fourth Amendment Claim**

Lastly, Plaintiff challenges the "invasive searches of one's bed room absent probable cause." The Fourth Amendment right to be secure against unreasonable searches and seizures extends to civil detainees. Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007), vacated on other grounds, ––– U.S. –––, 129 S. Ct. 2431 (2009). "The watchword of the Fourth Amendment in every context is 'reasonableness.'" Id. "Of course, 'the reasonableness of a particular search [or seizure] is determined by reference to the [detention] context.'" Id. (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)). "There are other concerns that mirror those that arise in the prison context, e.g., '"the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations.'" Id. (quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

Plaintiff's form complaint asserts only that civil detainees are sometimes subject to searches of their bedrooms. Plaintiff does not claim that his bedroom has been searched unreasonably, when, and by whom. In any event, courts have generally "concluded that no Fourth Amendment claim lies because civil detainees do not have a reasonable expectation of privacy in their rooms." Griego v. Allenby, 2012 WL 4670803, at *3 (E.D. Cal. Oct. 3, 2012), citing Rainwater v. Bell, 2012 WL 3276966, at *11 (E.D. Cal. Aug. 9, 2012) (civil detainee did not have a reasonable expectation of privacy in his jail cell); Pyron v. Ludeman, 2011 WL 3293523, at *6 (D. Minn. June 6, 2011) (search of a civil detainee's personal items in his cell did not violate the Fourth Amendment), report and recommendation adopted in full, 2012 WL 1597305 (D. Minn. Jul. 29, 2011); Banda v. Corzine, 2007 WL 3243917, at *7-8 (D.N.J. Nov. 1, 2007) (civil detainee unable to state Fourth Amendment claim as his expectation of privacy yielded to legitimate governmental interest in keeping facility free of controlled substances); Riley v. Doyle, 2006 WL 2947453, at *5 (W.D. Wis. Oct. 16, 2006) (civil detainee cannot state Fourth Amendment claim for repeated contraband searches of cell); Gilmore v. Kansas, 2004

WL 2203458, at *5 (D. Kan. Sept. 27, 2004) (upholding ban on pictures of children in general because of legitimate treatment interests); compare Stearns v. Stoddard, 2012 WL 1596965, at *3 (W.D. Wash. Apr. 11, 2012.) (open question whether civil detainee housed in a secure facility has any expectation of privacy in his cell), report and recommendation adopted in full, 2012 WL 1597305 (W.D. Wash. May 7, 2012.).

This claim will therefore be dismissed and leave to amend be granted. Plaintiff is hereby advised that any Fourth Amendment claim must be premised on more than the mere possibility that a civil detainee will have his or her room searched periodically and must include specific facts as to Plaintiff.

## V. **CONCLUSION AND ORDER**

Plaintiff's complaint fails to state a claim as discussed supra. Due to the lack of clarity regarding Plaintiff's current commitment status, he will be given leave to amend. If he chooses to do so, he must specifically show that habeas relief is not available to him and that success in this action would not necessarily demonstrate the invalidity of his confinement or its duration. He also must allege facts to state a claim under the legal standards set forth above.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First

Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his complaint, filed March 5, 2015;

2. Plaintiff's complaint (ECF No. 1) is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   October 19, 2015            /s/ *Michael J. Seng*
                                     UNITED STATES MAGISTRATE JUDGE

19